**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SCHACOBIE H. MANNING,    )    NO. CV 07-4389-MMM(E)
                         )
         Petitioner,   )
                         )
   v.                )    REPORT AND RECOMMENDATION OF
                         )
M.C. KRAMER, Warden,     )    UNITED STATES MAGISTRATE JUDGE
                         )
        Respondent.   )
_____)

    This Report and Recommendation is submitted to the Honorable Margaret M. Morrow, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

    On July 6, 2007, Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" ("Pet."), accompanied by a copy of Petitioner's amended habeas petition filed in the California Supreme Court in case number S147859 ("Pet. Attachment"). The case was referred to Magistrate Judge Jeffrey W. Johnson.

On August 31, 2007, Petitioner filed a "First Amended Petition, etc." ("FAP"), incorporating by reference claims made in the California Supreme Court petition attached to the original Petition. On November 24, 2008, Petitioner filed a Traverse.

On July 14, 2009, the case was transferred to Magistrate Judge Rosalyn M. Chapman.  On December 1, 2010, the case was transferred to Magistrate Judge Charles F. Eick.

On December 8, 2010, Magistrate Judge Eick issued a Minute Order directing Respondent to expand the record by causing the preparation and filing of a Reporter's Transcript of the proceedings conducted in the Los Angeles County Superior Court on June 3, 1996, in People v. Manning, GA026902-01.  The same Minute Order directed Respondent to file, within thirty days, a status report detailing Respondent's efforts to comply with the Minute Order.

On January 7, 2011, Respondent filed a Status Report stating that the Los Angeles County Court Reporter's Office had informed Respondent that court reporters' notes are destroyed after ten years and that the court reporter at the June 3, 1996 proceedings is now deceased. Respondent also stated that Respondent had requested a copy of the Superior Court file.  On February 18, 2011, Respondent filed a Second Status Report indicating that review of the Superior Court file confirmed that the file did not contain any transcript of the June 3, 1996 proceedings.

///

///

On February 25, 2011, Magistrate Judge Eick issued a Minute Order stating an intent to hold an evidentiary hearing on Petitioner's claim of ineffective assistance of trial counsel.  The same Minute Order appointed counsel to represent Petitioner.

On March 7, 2011, Respondent filed a "Motion for Review and Reconsideration of Magistrate Judge's Order Setting Evidentiary Hearing, etc." ("Motion for Reconsideration").  On March 28, 2011, Petitioner filed opposition to the Motion for Reconsideration.

On April 4, 2011, the United States Supreme Court issued its decision in Cullen v. Pinholster, 131 S. Ct. 1388 (2011) ("Pinholster").  On April 12, 2011, the District Judge referred the matter back to the Magistrate Judge for further proceedings.

On April 13, 2011, Magistrate Judge Eick ordered the parties to brief the impact, if any, of Pinholster on the propriety of conducting an evidentiary hearing in this case.  On May 2, 2011, Respondent filed "Respondent's Brief Regarding Impact of Cullen v. Pinholster, etc." ("Respondent's Pinholster Brief").  On May 13, 2011, Petitioner filed "Petitioner's Brief Regarding Impact of Cullen v. Pinholster, etc." ("Petitioner's Pinholster Brief").

**BACKGROUND**

On July 15, 1996, in the Los Angeles County Superior Court, Petitioner pled guilty to one count of second degree burglary, one count of possession of a forged instrument, and one count of

3

possession of a forged driver's license (Clerk's Transcript ["C.T."] 29-31, 43; Reporter's Transcript ["R.T."] 6-7).  On October 21, 1996, Petitioner admitted two prior convictions qualifying as "strikes" under California's Three Strikes law, California Penal Code sections 667(b) - (i) and 1170.12(a) - (d) (C.T. 47; R.T. 27-28).[1]  On the same date, the court denied Petitioner's motion to reduce the charges to misdemeanors, denied Petitioner's request to strike the priors pursuant to <u>People v. Superior Court (Romero)</u>, 13 Cal. 4th 497, 53 Cal. Rptr. 2d 789, 917 P.2d 628 (1996) ("<u>Romero</u>"), and imposed a sentence of twenty-five years to life (C.T. 49-51; R.T. 48).

On December 17, 1996, Petitioner's appellate counsel, Edi M. O. Faal, filed a Notice of Appeal in the Superior Court (C.T. 54).  On the same date, however, the Superior Court rejected the Notice of Appeal for failure to obtain a certificate of probable cause (<u>see</u> FAP, Ex. 1).  Also on December 17, 1996, attorney Faal filed an application for leave to file an appeal, which the Superior Court deemed to constitute Petitioner's notice of appeal (C.T. 54; FAP, Ex. 1).

On March 8, 2001, attorney Faal filed a habeas corpus petition in the Superior Court, challenging Petitioner's sentence (Pet., Ex. H).  The Superior Court denied this petition on March 30, 2001 (Pet.,

---

[1]    The Three Strikes Law consists of two nearly identical statutory schemes.  The earlier provision, enacted by the Legislature, was passed as an urgency measure, and is codified as California Penal Code §§ 667(b) - (i) (eff. March 7, 1994).  The later provision, an initiative statute, is embodied in California Penal Code § 1170.12 (eff. Nov. 9, 1994).  <u>See generally</u> <u>People v. Superior Court (Romero)</u>, 13 Cal. 4th 497, 504-05, 53 Cal. Rptr. 2d 789, 917 P.2d 628 (1996).  The State charged Petitioner under both versions (C.T. 30).

1 | Ex. H, last page).

2

3 | On May 7, 2003, Petitioner filed a habeas corpus petition in the
4 | Superior Court alleging, <u>inter alia</u>, that Petitioner's trial counsel
5 | assertedly provided ineffective assistance by failing to inform
6 | Petitioner that the prosecutor allegedly had offered a six-year plea
7 | bargain (FAP, Ex. 2).  On May 12, 2003, the Superior Court denied the
8 | petition on the ground that "the claimed error should be first
9 | addressed on appeal" (FAP, Ex. 1; Respondent's Lodgment 10).[2]  The
10 | Superior Court also then stated that, through apparent inadvertence
11 | and neglect, the clerk's office of the Superior Court had never
12 | processed Petitioner's appeal (FAP, Ex. 1; Respondent's Lodgment 10).
13 | The Superior Court deemed its earlier ruling of December 17, 1996 to
14 | constitute a grant of a certificate of probable cause, and directed
15 | the clerk's office to accept and process the notice of appeal (FAP,
16 | Ex. 1; Respondent's Lodgment 10).  On May 29, 2003, the Court of
17 | Appeal filed the appeal as case number B167422 (FAP, Ex. 3).

18

19 | On May 30, 2003, petitioner filed a <u>pro se</u> habeas corpus petition
20 | in the Court of Appeal, in case number B167442 (FAP, Ex. 6).  On
21 | June 19, 2003, in case number B167442, the Court of Appeal issued an
22 | order refusing to accept the petition on the ground that Petitioner
23 | was represented by counsel on appeal (FAP, Ex. 7).

24

25 | [2]    Respondent lodged two sets of documents, a set
26 | containing fifteen documents and a subsequent set containing four
   | documents.  Respondent did not number the documents in the second
27 | set consecutively to those in the first set.  To avoid confusion,
   | the Court has supplied consecutive document numbers for
28 | Respondent's second set of lodged documents.

It appears that, on July 23, 2003, Petitioner filed a habeas corpus petition in the California Supreme Court, in case number S117667.[3]  On March 30, 2004, the California Supreme Court denied the petition with citations to People v. Duvall, 9 Cal. 4th 464, 474, 37 Cal. Rptr. 2d 259, 886 P.2d 1252 (1995), In re Swain, 34 Cal. 2d 300, 304, 209 P.2d 793 (1949), cert. denied, 338 U.S. 944 (1950), 340 U.S. 938 (1951), and 342 U.S. 914 (1952), and In re Alvernaz, 2 Cal. 4th 924, 945, 8 Cal. Rptr. 2d 713, 830 P.2d 747 (1992).

On March 19, 2004, the Court of Appeal dismissed the appeal in case number B167422 for the failure by Petitioner's counsel to file an opening brief (FAP, Exs. 3, 8).[4]  On April 2, 2004, Mr. Faal filed a motion to vacate the dismissal and reinstate the appeal (FAP, Ex. 3). On April 7, 2004, the Court of Appeal granted the motion and reinstated the appeal (id.).

On April 23, 2004, the Court of Appeal granted Petitioner's motion to relieve Mr. Faal (id.).  On May 5, 2004, the Court of Appeal appointed attorney Gary Crooks as Petitioner's counsel (id.).  On August 23, 2004, Mr. Crooks filed an opening brief which alleged three claims related to sentencing but did not include any claim of

---

[3]    The present record does not contain this petition or the order denying it.  However, the California Supreme Court's docket in In re Schacobie Manning, case number S117667, of which the Court takes judicial notice (see Mir v. Little Company of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988)), shows that the petition was filed on July 23, 2003, and denied on March 30, 2004 (see attached California Supreme Court docket in In re Schacobie Manning, case number S117667).

[4]    The California Supreme Court cited former California Rule of Court 17.  Rule 8.220 replaced former Rule 17 in 2007.

1  ineffective assistance of trial counsel (Respondent's Lodgment 3).

2

3      On December 22, 2004, the Court of Appeal affirmed the judgment

4  (Respondent's Lodgment 6; see People v. Manning, 2004 WL 2958229 (Cal.

5  App. Dec. 22, 2004).  Attorney Crooks filed a petition for review in

6  the California Supreme Court, which that court denied summarily on

7  March 16, 2005 (FAP, Ex. 10; Respondent's Lodgments 7, 8).

8

9      On March 14, 2006, Petitioner filed a habeas corpus petition in

10  the Superior Court alleging, inter alia, that Petitioner's trial

11  counsel assertedly provided ineffective assistance by reportedly

12  failing to inform Petitioner that the prosecutor allegedly had offered

13  a six-year plea bargain (Respondent's Lodgments 10, 16).  On that

14  date, the Superior Court requested an informal response from the

15  Los Angeles County District Attorney (Respondent's Lodgment 10).  On

16  May 4, 2006, the Los Angeles County District Attorney filed an

17  informal response (Respondent's Lodgment 18).  On July 13, 2006,

18  Petitioner filed an amended petition, again asserting his claim of

19  ineffective assistance of trial counsel in assertedly failing to

20  inform Petitioner of the alleged six-year plea offer (Respondent's

21  Lodgment 17).  On July 17, 2006, the Superior Court denied the amended

22  petition, finding that Petitioner had made no prima facie showing of

23  ineffective assistance of counsel (FAP, Ex. 18; Respondent's Lodgment

24  10).

25

26      On August 14, 2006, Petitioner filed a habeas petition in the

27  Court of Appeal, in case number B193083 (Respondent's Lodgment 11).

28  This petition alleged, inter alia, Petitioner's claim of ineffective

7

assistance of counsel for assertedly failing to inform Petitioner of the alleged six-year plea offer.  The Court of Appeal denied the petition on September 14, 2006, in a brief written order (FAP, Ex. 19; Respondent's Lodgment 12).

On November 7, 2006, Petitioner filed a habeas corpus petition in the California Supreme Court (Respondent's Lodgment 13).  Petitioner filed an amended petition on February 28, 2007 (Respondent's Lodgment 15).[5]  The California Supreme Court denied the amended petition summarily on May 9, 2007 (FAP, Ex. 17; Respondent's Lodgment 14).

**PETITIONER'S CONTENTIONS**

Petitioner contends:

1.  Extreme and unusual delays in the state criminal justice system assertedly deprived Petitioner of the "opportunity for redress" (Grounds One and Five) (FAP, pp. 5, 38-46);

2.  Petitioner's trial counsel Leslie Lass allegedly rendered ineffective assistance by assertedly failing to advise Petitioner that the prosecution purportedly made a six-year plea offer on June 3, 1996 (Ground Two) (FAP, p. 5; Pet. Attachment, pp. 5-12);

---

[5]    The unsigned copy of the amended petition lodged by Respondent bears a signature date of February 25, 2007, but also bears a file stamp stating "DOCKETED LOS ANGELES" which bears a date of July 17, 2007 (see Respondent's Lodgment 15).  However, the California Supreme Court's docket in case number S147859 indicates that the California Supreme Court received the amended petition on February 28, 2007 (see FAP, Exhibit 16).

3.   Petitioner's two appellate attorneys allegedly rendered ineffective assistance in the following ways:

    a.   Mr. Faal allegedly failed to raise on appeal or by habeas petition the claim that trial counsel ineffectively failed to communicate the purported six-year plea offer to Petitioner; and

    b.   Mr. Crooks allegedly failed to raise on appeal the aforesaid claim of ineffective assistance of trial counsel and Petitioner's claim of allegedly prejudicial state court delay, and failed adequately to assert these claims in a habeas petition (Ground Three) (FAP, p. 6; Pet. Attachment, pp. 13-22); and

4.   The state courts allegedly "failed to conduct any 'meaningful inquiry'" into Petitioner's claim of ineffective assistance of trial counsel (Ground Four) (FAP, p. 6; Pet. Attachment, pp. 23-24).

**STANDARD OF REVIEW**

Under the "Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA"), a federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was

1  based on an unreasonable determination of the facts in light of the

2  evidence presented in the State court proceeding."  28 U.S.C. §

3  2254(d); <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-26 (2002); <u>Early v.</u>

4  <u>Packer</u>, 537 U.S. 3, 8 (2002); <u>Williams v. Taylor</u>, 529 U.S. 362, 405-09

5  (2000).

6

7      "Clearly established Federal law" refers to the governing legal

8  principle or principles set forth by the Supreme Court at the time the

9  state court renders its decision.  <u>Lockyer v. Andrade</u>, 538 U.S. 63

10  (2003).  A state court's decision is "contrary to" clearly established

11  Federal law if: (1) it applies a rule that contradicts governing

12  Supreme Court law; or (2) it "confronts a set of facts. . . materially

13  indistinguishable" from a decision of the Supreme Court but reaches a

14  different result.  <u>See</u> <u>Early v. Packer</u>, 537 U.S. at 8 (citation

15  omitted); <u>Williams v. Taylor</u>, 529 U.S. at 405-06.

16

17      Under the "unreasonable application prong" of section 2254(d)(1),

18  a federal court may grant habeas relief "based on the application of a

19  governing legal principle to a set of facts different from those of

20  the case in which the principle was announced."  <u>Lockyer v. Andrade</u>,

21  538 U.S. at 76 (citation omitted); <u>see also</u> <u>Woodford v. Visciotti</u>, 537

22  U.S. at 24-26 (state court decision "involves an unreasonable

23  application" of clearly established federal law if it identifies the

24  correct governing Supreme Court law but unreasonably applies the law

25  to the facts).  A state court's decision "involves an unreasonable

26  application of [Supreme Court] precedent if the state court either

27  unreasonably extends a legal principle from [Supreme Court] precedent

28  to a new context where it should not apply, or unreasonably refuses to

extend that principle to a new context where it should apply."
Williams v. Taylor, 529 U.S. at 407 (citation omitted).

"In order for a federal court to find a state court's application
of [Supreme Court] precedent 'unreasonable,' the state court's
decision must have been more than incorrect or erroneous." Wiggins v.
Smith, 539 U.S. 510, 520 (2003) (citation omitted). "The state
court's application must have been 'objectively unreasonable.'" Id.
at 520-21 (citation omitted); see also Waddington v. Sarausad, 555
U.S. 179, 129 S. Ct. 823, 831 (2009); Davis v. Woodford, 384 F.3d 628,
637-38 (9th Cir. 2004), cert. dism'd, 545 U.S. 1165 (2005). "Under
§ 2254(d), a habeas court must determine what arguments or theories
supported, . . . or could have supported, the state court's decision;
and then it must ask whether it is possible fairminded jurists could
disagree that those arguments or theories are inconsistent with the
holding in a prior decision of this Court." Harrington v. Richter,
131 S. Ct. 770, 786 (2011). This is "the only question that matters
under § 2254(d)(1)." Id. (citation and internal quotations omitted).
Habeas relief may not issue unless "there is no possibility fairminded
jurists could disagree that the state court's decision conflicts with
[the United States Supreme Court's] precedents." Id. at 786-87 ("As a
condition for obtaining habeas corpus from a federal court, a state
prisoner must show that the state court's ruling on the claim being
presented in federal court was so lacking in justification that there
was an error well understood and comprehended in existing law beyond
any possibility for fairminded disagreement.").

///

///

1    In applying these standards, the Court looks to the last reasoned

2   state court decision.  See DeWeaver v. Runnels, 556 F.3d 995, 997 (9th

3   Cir. 2009), cert. denied, 130 S. Ct. 183 (2009).  Where no reasoned

4   decision exists, as where the state court summarily denies a claim,

5   "[a] habeas court must determine what arguments or theories . . .

6   could have supported the state court's decision; and then it must ask

7   whether it is possible fairminded jurists could disagree that those

8   arguments or theories are inconsistent with the holding in a prior

9   decision of this Court."  Pinholster, 131 S. Ct. 1388, 1403 (2011)

10   (citation, quotations and brackets omitted).

11

12    In conducting a section 2254(d)(1) review of the last reasoned

13   state court decision, the Court is "limited to the record that was

14   before the state court that adjudicated the claim on the merits."

15   Pinholster, 131 S. Ct. at 1398.  In determining whether a state

16   court's decision was based on an unreasonable determination of the

17   facts, the Court also is limited to the record before the state court.

18   See 28 U.S.C. § 2254(d)(2).

19

20                              **DISCUSSION**

21

22    For the reasons discussed below,[6] the Petition should be denied

23   and dismissed with prejudice and without an evidentiary hearing.

24   ///

25   ///

26   _____

27       [6]   The Court has considered and rejected each of
     Petitioner's arguments.  The Court discusses Petitioner's
28   principal arguments herein.

## I.   **Petitioner Is Not Entitled to Habeas Relief on Grounds One, Four or Five of the First Amended Petition.**

Petitioner is not entitled to habeas relief on his claims, in Grounds One and Five of the First Amended Petition, that the delay in processing Petitioner's appeal assertedly prejudiced Petitioner. "[N]o 'clearly established Federal law, as determined by the Supreme Court of the United States,' recognizes a due process right to a speedy appeal." Hayes v. Ayers, 632 F.3d 500, 523 (9th Cir. 2011) (citation omitted).  The lengthy delay in the processing of Petitioner's direct appeal, though regrettable, cannot justify federal habeas relief under AEDPA standards.  See id.

Also without merit is Petitioner's contention, in Ground Four, that the Superior Court and the Court of Appeal erroneously failed to determine, on collateral review, whether defense counsel Leslie Lass rendered ineffective assistance (see Petition, Ground Four; Pet. Attachment, pp. 23-24).  As discussed at length in section II below, Petitioner has not proven that the Court of Appeal acted unreasonably in determining that Petitioner failed to show that a six-year offer was ever made.  In any event, federal habeas relief is unavailable to redress independent claims of alleged procedural error in state collateral proceedings.  Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998), cert. denied, 526 U.S. 1123 (1999); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir.), cert. denied, 493 U.S. 1012 (1989).

For the foregoing reasons, the state courts' rejection of the claims in Grounds One, Four and Five of the First Amended Petition was

1  not contrary to, or an objectively unreasonable application of, any
2  clearly established Federal law as determined by the United States
3  Supreme Court.  See 28 U.S.C. § 2254(d); Harrington v. Richter, 131
4  S. Ct. at 785-87.  Petitioner is not entitled to habeas relief on
5  Grounds One, Four or Five of the First Amended Petition.

7  **II.  The State Courts' Rejection of Petitioner's Claim of Ineffective**
8  **Assistance of Trial Counsel Was Not Unreasonable.  Petitioner Is**
9  **Not Entitled to Habeas Relief on Ground Two.**

11  **A.  Standards Governing Claims of Ineffective Assistance of**
12  **Counsel**

14  To establish ineffective assistance of counsel, Petitioner must
15  prove: (1) counsel's representation fell below an objective standard
16  of reasonableness; and (2) there is a reasonable probability that, but
17  for counsel's errors, the result of the proceeding would have been
18  different.  Strickland v. Washington, 466 U.S. 668, 688, 694, 697
19  (1984) ("Strickland").  A reasonable probability of a different result
20  "is a probability sufficient to undermine confidence in the outcome."
21  Id. at 694.  "That requires a 'substantial,' not just 'conceivable,'
22  likelihood of a different result."  Pinholster, 131 S. Ct. at 1403
23  (quoting Harrington v. Richter, 131 S. Ct. at 791).  The court may
24  reject the claim upon finding either that counsel's performance was
25  reasonable or the claimed error was not prejudicial.  Strickland, 466
26  U.S. at 697; Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002)
27  ("Failure to satisfy either prong of the Strickland test obviates the
28  need to consider the other.") (citation omitted).

Review of counsel's performance is "highly deferential" and there is a "strong presumption" that counsel rendered adequate assistance and exercised reasonable professional judgment.  Williams v. Woodford, 384 F.3d 567, 610 (9th Cir. 2004), cert. denied, 546 U.S. 934 (2005) (quoting Strickland, 466 U.S. at 689).  The court must judge the reasonableness of counsel's conduct "on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.  The court may "neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight. . . ."  Matylinsky v. Budge, 577 F.3d 1083, 1091 (9th Cir. 2009), cert. denied, 130 S. Ct. 1154 (2010) (citation and quotations omitted); see Yarborough v. Gentry, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted).  Petitioner bears the burden to show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."  Harrington v. Richter, 131 S. Ct. at 787 (citation and internal quotations omitted); see Strickland, 466 U.S. at 689 (petitioner bears burden to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (citation and quotations omitted).

A state court's decision rejecting a Strickland claim is entitled to "a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."  Harrington v. Richter, 131 S. Ct. at 785.  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied

1  <u>Strickland</u>'s deferential standard."  <u>Id.</u> at 788.

2

3       "In assessing prejudice under <u>Strickland</u>, the question is not

4  whether a court can be certain counsel's performance had no effect on

5  the outcome or whether it is possible a reasonable doubt might have

6  been established if counsel acted differently."  <u>Id.</u> at 791-92

7  (citations omitted).  Rather, the issue is whether, in the absence of

8  counsel's alleged error, it is "'reasonably likely'" that the result

9  would have been different.  <u>Id.</u> at 792 (quoting <u>Strickland</u>, 466 U.S.

10 at 696).  "The likelihood of a different result must be substantial,

11 not just conceivable."  <u>Id.</u>

12

13      Ineffective assistance claims are generally resolved under the

14 standard set forth in 28 U.S.C. section 2254(d)(1), which controls

15 both pure questions of law and mixed questions of law and fact.  <u>Nunes</u>

16 <u>v. Mueller</u>, 350 F.3d 1045, 1051 (2003), <u>cert. denied</u>, 543 U.S. 1038

17 (2004).  However, the standard set forth in 28 U.S.C. section

18 2254(d)(2) applies to the extent a habeas petition challenges any

19 factual determination of the state court.  <u>Id.</u>

20

21      **B.**    **<u>Factual Background</u>**

22

23            **1.**    **<u>Superior Court Proceedings</u>**

24

25      On June 3, 1996, the Superior Court called Petitioner's case for

26 trial (C.T. 39).  The prosecutor was Gloria Mas and Petitioner's

27 counsel of record was private attorney Enid Ballantyne (C.T. 39).

28 At the June 3, 1996 proceeding, however, attorney Leslie Lass appeared

for Ms. Ballantyne on Petitioner's behalf (C.T. 39; FAP, Ex. 5).  As previously indicated, due to the passage of time and the death of the court reporter, the reporter's transcript of the June 3, 1996 proceeding is not available.  The minute order reflects only that the matter was continued to July 8, 1996 on a defense motion (C.T. 39). A July 8, 1996 minute order shows only that the court continued the matter to July 15, 1996 (C.T. 40).

On July 15, 1996, Ms. Ballantyne appeared for Petitioner (R.T. 1).  Ms. Ballantyne told the court that she believed the "case should be disposed of" (R.T. 1).  She reminded the court that she had filed a Romero motion and a motion to reduce the charges to misdemeanors (R.T. 1-2).  The court asked the attorneys to approach the bench (R.T. 2). Following an unreported bench conference, Ms. Ballantyne said:  "I thoroughly discussed his [Petitioner's] options with him, and at this time there will be a change of plea" (R.T. 2).  Thereafter, prosecutor Gloria Mas questioned Petitioner concerning his understanding of the plea, advised Petitioner concerning the charges and the consequences of the plea, and obtained Petitioner's waivers of his rights (R.T. 2-6).  Among other things, Ms. Mas asked Petitioner: "Do you understand that at this point there are no promises made to you as to what your sentence will be, and it may very well be 25 to life?" (R.T. 3). Petitioner said he understood (R.T. 5).  Petitioner then pled guilty to the charges (R.T. 6).

On October 21, 1996, Ms. Ballantyne again appeared on Petitioner's behalf (C.T. 47; R.T. 9).  The prosecutor on this occasion was Amy Suehiro (C.T. 47; R.T. 9).  The court heard and

denied Petitioner's <u>Romero</u> motion and motion to reduce the charges to misdemeanors (R.T. 9, 15, 21-22).  Petitioner admitted the prior conviction allegations (R.T. 24-29).  Prior to imposing a Three Strikes sentence of twenty-five years to life, the court made the following comments:

> In imposing the sentence that I am about to impose, I
> will make the following statements, if they will be of any
> effect or help on appeal.  In the absence of the so-called
> Three Strikes Law, I would not sentence Mr. Manning to 25 to
> life.  I would sentence him to the high term of count 1,
> which is three years.  That would be doubled for six years,
> less his time credits.

(R.T. 30).

### 2. <u>Prosecutors' Declarations</u>

#### a. <u>Gloria Mas</u>

Prosecutor Gloria Mas submitted a declaration, bearing an execution date of April 28, 2006, in support of the Los Angeles County District Attorney's informal response filed on May 4, 2006 in the Superior Court (FAP, Ex. 4; Respondent's Lodgment 18, Ex. 7).  Ms. Mas was the calendar deputy in the courtroom in which Petitioner's criminal proceedings took place (FAP, Ex. 4, ¶ 2).  Although Ms. Mas assertedly reviewed the transcript of the Superior Court plea proceedings (<u>i.e.</u>, the July 15, 1996 transcript), she did not remember

1    Petitioner's case in detail (id.).  She did state, however, that the
2    discussion which occurred on that date prior to the judge asking
3    Ms. Mas and Ms. Ballantyne to approach the bench "suggested" to
4    Ms. Mas that the subject of the bench conference had been settlement
5    (id., ¶¶ 2(a), (b)).  According to Ms. Mas, "[t]hat was very typical
6    in [the judge's] courtroom," and "[t]here would have been no other
7    reason to have a discussion at the bench off the record" (id.,
8    ¶ 2(b)).

9

10       Ms. Mas' declaration continued:

11

12       c) This belief is further affirmed by my comment [R.T. 3]

13       that "There are no promises made to you as to what your

14       sentence will be."  That indicates to me that an offer other

15       than Manning's potential sentence was offered and rejected,

16       and that this offer would not be available if Manning

17       proceeded with a contested sentencing hearing.

18

19       d) Manning's only sentencing options at this point, if he

20       entered a plea, were: (1) 25 to life; (2) strike one prior

21       and double the sentence on the base charge; (3) strike both

22       priors and sentence on the underlying felony; and (4) reduce

23       the case to a misdemeanor.  The defense, as reflected in the

24       transcript, was asking for options 3 or 4.  This means to me

25       that there had been a discussion of option 2 and the

26       defendant, in the hope of receiving option 3 or 4, rejected

27       option 2.

28   ///

1      e) My informed opinion that this is what happened is

2      buttressed by defense counsel's statement [R.T. 2] in which

3      she states that she had thoroughly discussed all options

4      with her client.  The only option left at this point was

5      option 2.  Option 1 was his potential maximum sentence, and

6      he requested options 2 or 3 [sic] in the transcript, which I

7      obviously rejected and argued against.

8

9      3.  Based on everything stated above, it seems clear to me

10     that a settlement offer had been made to the defendant that

11     was less than his maximum exposure and that it was discussed

12     with him and rejected by him in the hope of getting an even

13     better sentence if he pled open and had a contested

14     sentencing hearing.

15

16 (id., ¶¶ 2(c) - (f), 3).

17

18          **b.**    **Amy F. Suehiro**

19

20    Prosecutor Amy F. Suehiro submitted a declaration, bearing an

21 execution date of April 24, 2006, in support of the Los Angeles County

22 District Attorney's informal response filed on May 4, 2006 in the

23 Superior Court (Pet. Attachment, Ex. 8 to Ex. V); Respondent's

24 Lodgment 18, Ex. 8).  Ms. Suehiro stated that she had been a Deputy

25 District Attorney in Los Angeles for over twenty years (Pet.

26 Attachment, Ex. 8 to Ex. V, p. 1).  Ms. Suehiro was assigned to the

27 courtroom in which Petitioner's criminal proceedings occurred and she

28 was supervised by Ms. Mas (id.).  Ms. Suehiro was the prosecutor who

took the plea of the prior conviction allegations on October 21, 1996, although Ms. Mas was the prosecutor who took the plea on July 15, 1996 (id., p. 2).  Ms. Suehiro opined that "it is clear in the transcript of October 21, 1996 that the People were opposed to the striking of any strikes in this case because the underlying charges were rapes of two separate women and that I clearly state that in the transcript" (id.).  Ms. Suehiro declared that it was her custom and practice to state offers made to the defendant on the record, and she added that, if there were any offer pending in Petitioner's case, she believed that the offer would have been stated to the court and Petitioner on the record on either July 15, 1996 or October 21, 1996 (id.).

### 3.   Evidence Concerning Defense Counsel

#### a.   Handwritten Notes

A copy of the June 3, 1996 Superior Court minute order bears a handwritten note in the right margin which states: "Wrote [or "Write"] note to Ballantyne" (Petition, Exhibit A).

An undated, handwritten note states:

E - Manning continued until July 8.  The prosecutor is interested in working out a deal (she mentioned 6 years).

(Petition, Exhibit C).

///

///

1

                 **b.**   **Gary Crooks**

2

3      Gary Crooks submitted a declaration, bearing an execution date of

4  July 9, 2005, in support of Petitioner's 2006 Superior Court Petition

5  (Pet. Attachment, Ex. E; Respondent's Lodgment 16, Ex. 3; Respondent's

6  Lodgment 17, Ex. E).  Mr. Crooks stated that, during the course of the

7  direct appeal, Mr. Crooks investigated the issue of Ms. Ballantyne's

8  possible ineffectiveness concerning alleged plea discussions (Pet.

9  Attachment, Ex. E, ¶ 4).  Petitioner allegedly provided Mr. Crooks

10  with the June 3, 1996 minute order bearing the handwritten note and

11  the note to "E," assertedly telling Mr. Crooks that Mr. Faal had found

12  the documents in Ms. Ballantyne's trial file (id., ¶¶ 5, first ¶ 7).

13  Mr. Faal reportedly confirmed to Mr. Crooks that Mr. Faal had found

14  the documents in Ms. Ballantyne's file (id., first ¶ 7).

15

16      Mr. Crooks allegedly made an appointment to view Ms. Ballantyne's

17  file, but when he arrived at Ms. Ballantyne's office on March 1, 2005,

18  he supposedly was informed that the file had been lost or misplaced

19  (id., ¶ 6).  Ms. Lass reportedly told Mr. Crooks that the handwriting

20  on the minute order and the "E" note was that of Ms. Lass, and that

21  she remembered the case but did not recall any details (id., second

22  ¶ 7).  Ms. Ballantyne reportedly told Mr. Crooks that she did not

23  remember seeing the note from Ms. Lass (id., ¶ 8).  Ms. Ballantyne

24  also reportedly told Mr. Crooks that she did not remember any plea

25  discussions in the case, but that if the prosecutor had made a plea

26  offer Ms. Ballantyne would have informed her client "because that is

27  her policy" (id., ¶ 9).

28  ///

1                 **c.**    **Leslie Lass**

2

3      Attorney Leslie Lass submitted a declaration, bearing an

4 execution date of March 31, 2006, in support of the Los Angeles County

5 District Attorney's informal response filed on May 4, 2006 in the

6 Superior Court (FAP, Ex. 5; Respondent's Lodgment 18, Ex. 5).

7 Ms. Lass acknowledged appearing for Ms. Ballantyne on Petitioner's

8 case on June 3, 1996, but said she had no independent recollection of

9 the events of her appearance (FAP, Ex. 5, ¶ 1).  Ms. Lass did not

10 recall "if the prosecutor spoke privately to [Ms. Lass] about working

11 out a deal or if it was on the record in open court" (id.).  Ms. Lass

12 said that the handwriting on the June 3, 1996 minute order was not

13 hers, that she had no idea who wrote it, and that she never told

14 Mr. Crooks it was hers (id., ¶ 2).  Ms. Lass acknowledged that the "E"

15 note was hers, but said she did not recall what she did with this note

16 after she wrote it (id.).  Ms. Lass said she could have placed it in

17 the file or could have handed it to Ms. Ballantyne (id., ¶ 3).

18

19                 **d.**    **Enid Ballantyne**

20

21      Attorney Ballantyne submitted a declaration, bearing an execution

22 date of March 30, 2006, in support of the Los Angeles County District

23 Attorney's informal response filed on May 4, 2006 in the Superior

24 Court (Pet. Attachment, Ex. 6 to Ex. V; Respondent's Lodgment 18,

25 Ex. 6).  Ms. Ballantyne said she remembered the case well because it

26 was one of the first cases she handled after the California Supreme

27 Court's ruling in Romero (id., ¶ 1).  Ms. Ballantyne said she did not

28 recall a proposed six-year plea offer (id., ¶ 7).  She said that, if

1  such an offer had been made, she would have communicated it to

2  Petitioner and would have recommended it (id.).  Ms. Ballantyne opined

3  that it was "odd" that Petitioner had no transcripts of any pretrial

4  hearings because "usually such offers are made in open court with the

5  defendant present" (id.).  Ms. Ballantyne recalled discussing options

6  with Petitioner, who allegedly was "wondering why he would get life in

7  prison for a forged check when he did county time on two rapes" (id.,

8  ¶ 8).

9

10  According to Ms. Ballantyne, the court allegedly would entertain

11  a Romero motion only at sentencing, which meant that Petitioner would

12  have to enter a plea before the ruling on the Romero motion (id.,

13  ¶ 10).  Ms. Ballantyne stated: "At no time during this discussion did

14  the prosecution state a willingness to strike one strike and sentence

15  Mr. Manning under the one-strike scheme" (id.).  Ms. Ballantyne stated

16  that the prosecutor "was adamant that Mr. Manning plead to all counts

17  and take his chances with [the judge] as to the strikes" (id.).

18

19  Ms. Ballantyne said that she told Mr. Crooks that Petitioner's

20  file had been given to Petitioner's appellate counsel, and denied

21  telling Mr. Crooks the file had been lost or misplaced (id., ¶ 12).

22

23  **4.   Petitioner's Declaration**

24

25  In a declaration submitted in support of his 2006 Superior Court

26  petition, and dated on the ninth of an unidentified month in 2006,

27  Petitioner stated that on June 3, 1996, Ms. Lass never informed

28  Petitioner that Ms. Mas supposedly had communicated a six-year plea

offer to Ms. Lass (Pet. Attachment, Ex. B; Respondent's Lodgment 16, Ex. 4; Respondent's Lodgment 17, Ex. B).  Petitioner stated that, had Ms. Lass informed Petitioner of the alleged six-year plea offer, Petitioner would have accepted the offer immediately and would have entered his plea that day (Pet. Attachment, Ex. B).  Petitioner also stated that, on July 15, 1996, Ms. Mas never extended any type of plea bargain to Petitioner, either before or after the plea (id.).

C.   **Relevant State Court Proceedings and Decisions**

Petitioner presented the subject claim of ineffective assistance of trial counsel in his amended habeas petition filed in the California Supreme Court (see Respondent's Lodgment 15).  The California Supreme Court's summary denial of this claim (Respondent's Lodgment 14) constitutes a decision on the merits for purposes of applying the AEDPA standard of review.  See Harrington v. Richter, 131 S. Ct. at 784-85.  This Court looks through the California Supreme Court's summary disposition to the last reasoned state court decision, here the decision of the Court of Appeal in case number B193083.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground."); DeWeaver v. Runnels, 556 F.3d 995, 997 (9th Cir.), cert. denied, 130 S. Ct. 183 (2009) ("In this case, because the California Supreme Court denied DeWeaver's appeal without citation or comment, we look to the California Court of Appeal's decision as the basis for the state's judgment. [citation].").

25

Petitioner attached various exhibits to both his California Supreme Court habeas petition in case number S147859 and to his Court of Appeal habeas petition in case number B193083, including:

- a copy of the Superior Court's June 3, 1996 minute order bearing the handwritten note "Wrote [or "Write"] note to Ballantyne"

- the "E" note

- Petitioner's declaration bearing a signature date on the ninth day of an unidentified month in 2006

- Mr. Crooks' July 9, 2005 declaration

- Ms. Lass' March 31, 2006 declaration

- several pages of the Reporter's Transcript, including the page recording the sentencing judge's comment that, in the absence of the Three Strikes Law, the judge would have sentenced petitioner to a six-year term

- Petitioner's May 7, 2003 Superior Court habeas petition, in which Petitioner alleged that trial counsel ineffectively failed to advise Petitioner of the alleged six-year plea offer

///

///

1      - the Los Angeles County District Attorney's informal
2      response filed on May 4, 2006 in the Superior Court, to
3      which were attached exhibits including the declarations of
4      Ms. Ballantyne, Ms. Mas and Ms. Suehiro

6  (see Respondent's Lodgments 11, 15).

8      In rejecting Petitioner's claim of ineffective assistance of
9  counsel in case number B193083, the Court of Appeal stated:

11      The petition for writ of habeas corpus, filed August 14,
12      2006, has been read and considered with the appeal
13      (B167422).  Petitioner fails to establish that a plea
14      bargain was, in fact, offered.  A fortiori, he cannot
15      establish ineffective assistance of counsel relating to the
16      purported failure to communicate a plea bargain.  In view of
17      the record he cannot establish that, even if such an offer
18      had been made, it would have been accepted by the trial
19      court.  (In re Alvernaz (1992) 2 Cal.4th 924, 933-38.)

21  (FAP, Ex. 19; Respondent's Lodgment 12).

23      D.   **Discussion**

25      To show an entitlement to habeas relief on his claim that trial
26  counsel ineffectively failed to inform Petitioner of the prosecution's
27  purported six-year plea offer, Petitioner must show, inter alia, that
28  the prosecutor actually communicated a six-year plea offer to

Petitioner's counsel.  As indicated above, the Court of Appeal made a factual determination that, on the evidence submitted, Petitioner had failed to make the requisite showing of the purported plea offer. Therefore, to obtain federal habeas relief, Petitioner must prove that this factual determination by the Court of Appeal was "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" within the meaning of 28 U.S.C. section 2254(d)(2).  See Lambert v. Blodgett, 393 F.3d 943, 971-72 (9th Cir. 2004), cert. denied, 546 U.S. 963 (2005).[7]

Under section 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Pinholster, 131 S. Ct. at 1411 (even if federal habeas court might have reached a different conclusion as an initial matter, state court did not act unreasonably in concluding that petitioner failed to show prejudice from counsel's alleged ineffectiveness) (footnote omitted); Wood v.

---

[7]    The record does not indicate that the Court of Appeal applied a materially incorrect legal standard to Petitioner's ineffective assistance claim.  In his Court of Appeal petition, Petitioner cited Strickland as well as federal authorities applying Strickland (see Respondent's Lodgment 11, pp. 5, 11-12). In its decision, the Court of Appeal cited People v. Alvernaz, which applied the Strickland standards.  See People v. Alvernaz, 2 Cal. 4th at 936-37; Nunes v. Mueller, 350 F.3d at 1053 (noting that People v. Alvernaz applied Strickland standards).  Contrary to Petitioner's apparent argument (see FAP, p. 1; Traverse, p. 5), the standard set forth in United States v. Cronic, 466 U.S. 648 (1984), does not apply here.  See Bell v. Cone, 535 U.S. 685, 696-97 (2002) (Cronic presumption of prejudice attaches only when the attorney's failure is "complete"); Smith v. Robbins, 528 U.S. 259 (2000) (even appellate counsel's failure to file any brief addressing the merits of an appeal is evaluated under the two-pronged Strickland analysis).

Allen, 130 S. Ct. 841, 849 (2010) (where "[r]easonable minds reviewing the record might disagree," that does not "suffice to supersede the trial court's . . . determination.") (citation and internal quotations omitted); Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004), cert. denied, 543 U.S. 1038 (2004) ("[I]t is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision; rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.") (citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state court record, it determines that the state court was not merely wrong, but actually unreasonable." Taylor v. Maddox, 366 F.3d at 999 (citations omitted). In applying the section 2254(d)(2) standard, the Court "must be particularly deferential to [its] state court colleagues." Id. at 1000. AEDPA "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

As previously indicated, the evidence relevant to the section 2254(d)(2) analysis is restricted to the evidence presented to the state court. See 28 U.S.C. § 2254(d)(2); see also Pinholster, 131 S. Ct. at 1400 n.7; Rountree v. Balicki, 640 F.3d 530, 538 (3d Cir. 2011) ("Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication.") (citing Pinholster, 131 S. Ct. at 1401–03). In conducting the section

2254(d)(2) analysis, however, the federal habeas court will also analyze the adequacy of the state court's factfinding process.  See Hurles v. Ryan, 2011 WL 2641287, at **7-10 (9th Cir. July 7, 2011); Nunes v. Mueller, 350 F.3d at 1054.  The factfinding process may be defective, for example, where: (1) the state court makes factual findings without giving the petitioner the opportunity to present evidence; (2) the state court "plainly misapprehend[s] or misstate[s] the record in making [the] findings and the misapprehension goes to a material factual issue that is central to [the] petitioner's claim"; or (3) the state court ignores evidence before it supporting the petitioner's claim.  Taylor v. Maddox, 366 F.3d at 1001 (citations omitted).  However, "mere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'"  Lambert v. Blodgett, 939 F.3d at 972 (quoting Taylor v. Maddox, 366 F.3d at 999).

Under California law, to establish a prima facie case, a habeas petitioner must state with particularity the facts on which relief is sought, and must include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations.  People v. Duvall, 9 Cal. 4th 464, 474-75, 37 Cal. Rptr. 2d 259, 265, 886 P.2d 1252 (1995).  "'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.'"  Id. (citations omitted).  In reviewing the sufficiency of

the petition, the state habeas court asks "whether, assuming the
petition's factual allegations are true, the petitioner would be
entitled to relief."  In re Marquez, 153 Cal. App. 4th 1, 11, 62 Cal.
Rptr. 3d 429 (2007); see also People v. Duvall, 9 Cal. 4th at 474-75.
"If the court determines that the petition does not state a prima
facie case for relief . . ., the court will deny the petition
outright, such dispositions being commonly referred to as summary
denials."  Bd. of Prison Terms v. Superior Court, 130 Cal. App. 4th
1212, 1234, 31 Cal. Rptr. 3d 80 (2005) (citation and internal
quotations omitted).

    In the present case, neither the Court of Appeal's material
finding of fact nor the Court of Appeal's factfinding process was
unreasonable, given the factual record before the Court of Appeal.
Petitioner did not submit to the Court of Appeal any direct evidence
that the prosecution ever actually offered a six-year plea bargain.
None of the four attorneys involved in Petitioner's case recalled any
such plea offer.  Neither of Petitioner's trial attorneys recalled any
six-year plea offer being made by the prosecutor at any time, much
less on June 3, 1996.  Ms. Lass' "E" note suggested that Ms. Lass and
the prosecutor might well have discussed the possibility of a six-year
plea bargain on June 3, 1996, but the note did not prove that the
prosecutor ever actually offered such a bargain.

    Neither of the prosecutors stated a recollection of a six-year
plea offer.  Ms. Mas said she did not recall Petitioner's case in
detail.  Although Ms. Mas said review of the transcript of the
July 15, 1996 proceeding "suggested" that a plea discussion occurred

on that date, she did not say (and apparently could not remember)
whether such discussion actually had occurred.  Ms. Mas did not say
that she, or any other prosecutor, offered (or even discussed) any
six-year plea deal on June 3, 1996.  In fact, she did not even mention
the June 3, 1996 proceeding.  She stated only that it "seemed" clear
to her from reading the record that, on July 15, 1996, an offer had
been made and that the Petitioner had rejected the offer.  Reading the
same record, Ms. Suehiro reached a different conclusion, interpreting
the transcript to indicate that the prosecution had made no offer and
had been opposed to striking one of Petitioner's strikes.[8]


     Notably, Petitioner did not contend in the Court of Appeal that
his counsel failed to apprise him of some offer allegedly made during
the July 15, 1996 proceedings.  In fact, Petitioner disputed Ms. Mas'
suggestion of what occurred on July 15, 1996 (see Respondent's
Lodgment 11, p. 7).  Petitioner stated that Ms. Mas' declaration was
"limited to discussing distant collateral matters that she claimed
happened during Petitioner's July 15, 1996 plea hearing which occurred
approximately 1 1/2 months after the June 3, 1996 date at question in
this action . . . ."  (id.).  Petitioner contended that Ms. Mas "did
not extend any type of proposed plea bargain to petitioner on July 15,
1996, neither prior to nor after petitioner[']s plea of guilty"
(Respondent's Lodgment 11, p. 7 & Ex. B) (emphasis added).  Nor did
Petitioner assert that Ms. Ballantyne was at fault in failing to
convey any offer to Petitioner.  Indeed, Petitioner contended in the

---

     [8]    Ms. Ballantyne, who appeared for Petitioner on July 15
and who purported to recall Petitioner's case well, declared that
she did not recall any six-year plea offer.

1    Court of Appeal that his appellate counsel, Mr. Crooks, focused
2    incorrectly on Ms. Ballantyne rather than on Ms. Lass when drafting
3    Petitioner's Superior Court petition (see Respondent's Lodgment 11,
4    p. 17).

5

6        The Court of Appeal could have credited all of the submitted
7    evidence that was arguably favorable to Petitioner and still could
8    have reasonably concluded that Petitioner had failed to show that a
9    six-year plea bargain offer was ever actually made.  Even if the Court
10   of Appeal believed Ms. Lass' declaration (denying any memory of the
11   relevant events but acknowledging authorship of the "E" note), and
12   also believed the hearsay statement within the "E" note that the
13   prosecutor "mentioned 6 years" on June 3, 1996, it was not
14   unreasonable for the Court of Appeal to conclude that this evidence
15   failed to show that the prosecutor actually made a six-year offer on
16   June 3, 1996, as Petitioner alleged.[9]

17

18       It is true that the Court of Appeal had before it two
19   prosecutors' conflicting interpretations of the July 15, 1996
20   transcript, one of which contained speculation that an offer had been
21   made and rejected on July 15.  As previously indicated, however,
22   Petitioner did not rely in the Court of Appeal on Ms. Mas'

23   _____

24         [9]    Petitioner presumably could have no personal knowledge
     of the existence of an alleged offer that he contends was never
25   disclosed to him.  Nevertheless, Petitioner emphatically alleged
     to the Court of Appeal that the prosecutor actually made a six-
26   year plea offer (Respondent's Lodgment 11, p. 6) (alleging that
     evidence shows that "the existence of the undisclosed plea offer
27   is a 'demonstrable reality'").  The Court of Appeal was not
     required to accept the accuracy of Petitioner's foundationless
28   allegation.

                                      33

interpretation of the July 15, 1996 transcript.  Petitioner deemed this interpretation immaterial (or, as Petitioner put it, "distant[ly] collateral") to Petitioner's claim that an offer was made on June 3, 1996.  Petitioner framed the issue in the Court of Appeal as whether the prosecutor made an offer on June 3, 1996 which Petitioner's counsel assertedly failed to communicate to Petitioner.  On this issue, the accuracy of Ms. Mas' interpretation of the July 15, 1996 transcript, or any conflict between the two prosecutors' declarations concerning the proceedings on that date, was essentially immaterial.[10]  In light of Petitioner's framing of the issue as relating solely to the alleged June 3 offer, and Petitioner's expressed view that Ms. Mas' declaration was only "distant[ly] collateral" to that issue, the Court of Appeal reasonably could have disregarded the declarations of Ms. Mas and Ms. Suehiro entirely.

Even assuming <u>arguendo</u> that the Court of Appeal did not disregard as immaterial the declarations of the prosecutors, in these declarations both prosecutors appear to have been doing nothing more than expressing their lack of recollection and their subjective interpretations of the transcripts.  Neither prosecutor purported to remember what had occurred in Petitioner's case.  The Court of Appeal reasonably could have concluded that the prosecutors' interpretations of the record were insufficient to show that any six-year offer

---

[10]    Indeed, in the First Amended Petition, Petitioner asserts that "the only statement contained in the prosecutor Gloria Mas['] written declaration that can be said to have any relation to June 3, 1996, the day the plea bargain was offered, is the prosecutor's statement that "<u>While I don't remember the case in detail</u>. . . ." (FAP, p. 30) (citations omitted; original emphasis).

1  actually was made at any time, much less on June 3, 1996, as
2  Petitioner alleged.

3

4      As the above analysis also demonstrates, there was nothing
5  unreasonable about the Court of Appeal's factfinding process.  The
6  Court of Appeal did not refuse Petitioner an opportunity to present
7  evidence, did not materially misapprehend the record in making its
8  determination, and did not ignore material evidence supporting
9  Petitioner's claim.  See Taylor v. Maddox, 366 F.3d at 1001.  Nor did
10 the Court of Appeal refuse Petitioner an evidentiary hearing.
11 Petitioner did not request that the Court of Appeal order an
12 evidentiary hearing (Respondent's Lodgment 11, pp. 1-25).

13

14     Thus, the present case differs significantly from Nunes v.
15 Mueller, supra.  In Nunes, the petitioner contended that his attorney
16 had failed to inform him accurately of the terms of a plea offer.  Id.
17 The California Court of Appeal denied this claim without a hearing,
18 ruling that the petitioner's contentions were "meritless on their
19 face."  Id. at 1053.  The Court of Appeal deemed the petitioner's
20 evidence of counsel's ineffectiveness to be "of dubious relevance,"
21 and rejected as "simply not credible" the petitioner's claim that he
22 could not reach his attorney to clarify the plea offer.  Id. at 1053.

23

24     On federal habeas, the District Court in Nunes held an
25 evidentiary hearing and granted the writ.  Id. at 1050.  On appeal,
26 the Ninth Circuit affirmed.  Id. at 1054-56 & n.n.6, 7.  The Ninth
27 Circuit faulted the California Court of Appeal for denying the
28 petition on the ground that the petitioner's evidence was not credible

35

while simultaneously purporting to accept the petitioner's contentions at face value.  Id.  According to the Nunes Court, the petitioner's allegation that his attorney gave him incorrect information and advice concerning the plea offer, and the petitioner's allegation that he would have accepted the offer had he received accurate information, presented a prima facie case for relief under Strickland.  Nunes v. Mueller, 350 F.3d at 1054 & n.6.  The Ninth Circuit found it "particularly unacceptable" for the Court of Appeal "to have eschewed an evidentiary hearing on the basis that it was accepting Nunes' version of the facts, then to have given the lie to that rationale by discrediting Nunes' credibility and rejecting his assertions."  Id. at 1055 n.7.

In the present case, by contrast, no credibility determination necessarily attended the Court of Appeal's conclusion that Petitioner's evidence, even if believed, fell short of the requisite factual showing.  As discussed above, the Court of Appeal could have accepted as true the contents of the "E" note and all of the attorney declarations and other competent evidence before it, and still reasonably conclude that Petitioner had failed to show the offer of a six-year plea bargain.  Nothing in the Court of Appeal's methodology undermines the reasonableness of this factual finding.

Accordingly, the Court of Appeal's conclusion that Petitioner failed to prove the offer of the alleged plea bargain was a reasonable factual determination in light of the then-existing state court record.  Because the Court of Appeal's determination was reasonable, this Court has "no warrant to disturb it."  Berghuis v. Smith, 130 S.

1  Ct. 1382, 1389 (2010) (citing 28 U.S.C. section 2254(d)(2)).[11]

2

3      The United States Supreme Court has declined to explain the

4  relationship, if any, between section 2254(d)(2) and section

5  2254(e)(1).  See Wood v. Allen, 130 S. Ct. at 849; Rice v. Collins,

6  546 U.S. 333, 339-40 (2006).  The Ninth Circuit attempted to explain

7  this relationship in Taylor v. Maddox, supra.  The Taylor v. Maddox

8  Court stated in dictum that if a state court's fact-finding process

9  survives the review prescribed in section 2254(d)(2), then the

10  presumption of correctness set forth in 28 U.S.C. section 2254(e)(1)

11  _____

12      [11]    Petitioner might also argue that, regardless of the
13  existence or nonexistence of any actual offer of a six-year plea
    bargain, the Court of Appeal unreasonably failed to deem
14  Petitioner's counsel ineffective for allegedly not pursuing plea
    negotiations more vigorously.  Any such argument should be
15  rejected.  On the record before the Court of Appeal, there was
    insufficient proof (as distinguished from speculation) that
16  further negotiations would have ripened into an actual offer from
    the prosecution of the bargain Petitioner now claims he desired.
17  Accordingly, even if counsel was unreasonable in failing to
    pursue plea bargain negotiations more vigorously, the Court of
18  Appeal was reasonable in rejecting Petitioner's ineffectiveness
    claim, because Petitioner failed to prove Strickland prejudice.
19  See Kohlmiller v. United States, 2010 WL 3270753, at *7 (W.D. Pa.
20  Aug. 18, 2010) ("A finding of ineffective assistance of counsel
    cannot be based on pure speculation that a better deal would have
21  been offered by the Government"); United States v. Smith, 2009 WL
    1578058, at *5 (E.D. Pa. June 5, 2009) ("the petitioner must
22  provide some evidence that a plea was offered by the Government,
    not simply speculation that a deal would have been offered");
23  Wessling v. Kenney, 2007 WL 1289945, at *2 (D. Neb. Mar. 13,
24  2007) ("A plea offer actually extended is a wholly different
    matter from a plea bargain a petitioner simply believes his
25  attorney could or should have obtained for him"); see also
26  Weatherford v. Bursey, 429 U.S. 545, 561 (1977) ("there is no
    constitutional right to plea bargain"); United States v. Herrera,
27  640 F.2d 958, 962 (9th Cir. 1981) ("The Government can refuse to
    bargain altogether . . . and can thus cut off or limit
28  negotiations if it chooses to do so") (citation omitted).

1  applies.  Taylor v. Maddox, 366 F.3d at 1000.

3       Once the state court's fact-finding process survives
4  this intrinsic review [under section 2254(d)(2)] – or in
5  those cases where petitioner does not raise an intrinsic
6  challenge to the facts as found by the state court – the
7  state court's findings are dressed in a presumption of
8  correctness, which then helps steel them against any
9  challenge based on extrinsic evidence, i.e., evidence
10  presented for the first time in federal court.  AEDPA spells
11  out what this presumption means: State-court fact-finding
12  may be overturned based on new evidence presented for the
13  first time in federal court only if such new evidence
14  amounts to clear and convincing proof that the state-court
15  finding is in error.  See 28 U.S.C. § 2254(e)(1).

17  Taylor v. Maddox, 366 F.3d at 1000.[12]

19       It might be argued under the Taylor v. Maddox dictum that this
20  Court should now afford Petitioner an opportunity to rebut, through
21  the submission of new evidence, the section 2254(e) presumption of
22  correctness with which the Court of Appeal's reasonable factual

_____

24       [12]     In Taylor v. Maddox, the petitioner did not present any
25  evidence in federal court.  See Taylor v. Maddox, 366 F.3d at
   1000.  Because the Ninth Circuit in Taylor v. Maddox ruled that
26  the state court's factual determination was unreasonable under
   section 2254(d)(2), the Taylor v. Maddox Court had no occasion to
27  apply section 2254(e)(1).  See id. at 1108.  Consequently, the
   Taylor v. Maddox Court's discussion of section 2254(e)(1) was
28  dictum.

finding is now "dressed."  After Pinholster, however, to afford
Petitioner such an opportunity would be an idle act.  To obtain
federal habeas relief on his claim of trial counsel's alleged
ineffectiveness, Petitioner must show either that: (1) the Court of
Appeal's determination was an unreasonable application of clearly
established Supreme Court law under section 2254(d)(1); or (2) the
Court of Appeal's factual finding was unreasonable under section
2254(d)(2) in light of the evidence presented to that court.  With
respect to the claimed existence of the alleged six-year plea offer,
this Court already has determined that Petitioner has failed to prove
that the Court of Appeal's factual finding was unreasonable under
section 2254(d)(2).  And, with respect to section 2254(d)(1),
Pinholster absolutely forbids this Court from considering any new
evidence in the analysis.  Pinholster, 131 S. Ct. at 1398 (section
2254(d)(1) review is "limited to the record that was before the state
court that adjudicated the claim on the merits").[13]


     In practice, therefore, Pinholster necessarily abrogates the
dictum in Taylor v. Maddox and obviates any need for an evidentiary
hearing in the present case.  The Taylor v. Maddox dictum suggested
that, following the federal district court's determination that the
state court's factual findings were reasonable under section
2254(d)(2), the petitioner nevertheless might obtain federal habeas

_____

[13]     For this reason, the result herein would remain the
same regardless of whether the Court of Appeal's specific ruling
that "Petitioner fails to establish that a plea bargain was in
fact offered" constituted a "determination of the facts" within
the meaning of section 2254(d)(2) or an "application of . . .
law" within the meaning of section 2254(d)(1).

relief by rebutting those findings' presumption of correctness under section 2254(e)(1) through the submission of new evidence. After Pinholster, however, section 2254(e)(1) rebuttal through the submission of new evidence builds a road to nowhere. In the present case, for example, even if Petitioner were to prove at an evidentiary hearing that the prosecution actually made a six-year plea offer on June 3, 1996, this Court would be unable to grant habeas relief to Petitioner. New evidence of the making of a six-year plea offer would not alter for purposes of section 2254(d)(2) the reasonableness of the Court of Appeal's contrary finding on the factual record before that court. Nor could any such new evidence justify a conclusion that the Court of Appeal's decision was unreasonable under section 2254(d)(1), because Pinholster expressly excludes all new evidence from the section 2254(d)(1) analysis. See Pinholster at 1400 ("evidence introduced in federal court has no bearing on the § 2254(d)(1) review").

Thus, with or without an evidentiary hearing, Petitioner cannot possibly satisfy section 2254(d)(2) or section 2254(d)(1). Hence, Petitioner is not entitled to habeas relief on Ground Two of the First Amended Petition. See 28 U.S.C. § 2254(d).[14]

---

[14]   The Court of Appeal found that "[i]n view of the record [Petitioner] cannot establish that, even if such an offer [for a six-year plea bargain] had been made, it would have been accepted by the trial court" (FAP, Ex. 19; Respondent's Lodgment 12). At sentencing, the trial court expressly stated that in the absence of the Three Strikes Law the court would have imposed a six-year sentence (see R.T. 30). Thus, there appears little doubt that the trial court would have approved a six-year offer had one existed. The Court of Appeal's contrary finding quoted above was
(continued...)

III. **The State Courts' Rejection of Petitioner's Claim of Ineffective Assistance of Appellate Counsel Was Not Unreasonable.  Petitioner Is Not Entitled to Habeas Relief on Ground Three.**

The state courts denied Petitioner's claim of ineffective assistance of appellate counsel without a reasoned opinion. Therefore, this Court must determine what arguments or theories supported, or could have supported, the state courts' decisions, and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."  Harrington v. Richter, 131 S. Ct. at 786.

The standards set forth in Strickland govern claims of ineffective assistance of appellate counsel.  See Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Bailey v. Newland, 263 F.3d 1022, 1028 (9th Cir. 2001), cert. denied, 535 U.S. 995 (2002).  Appellate counsel

---

[14](...continued)
almost certainly unreasonable.  This finding was also immaterial, however.  As discussed herein, the Court of Appeal's reasonable finding that Petitioner failed to show that a six-year offer existed is fatal to Petitioner's Strickland claim.  The Court therefore need not analyze this claim further.  But see Arnold v. Thaler, 630 F.3d 367, 371-72 (5th Cir. 2011), pet for cert. filed, 79 U.S.L.W. 3609 (Apr. 5, 2011) (Strickland does not require petitioner to show, in addition to showing that he would have accepted plea offer counsel allegedly failed to convey, that the judge would have accepted the plea offer); Mask v. McGinnis, 233 F.3d 132, 142 (2d Cir. 2000), cert. denied, 534 U.S. 943 (2001) (same); see also Nunes v. Mueller, 350 F.3d at 1054 (petitioner "needed only to demonstrate" to state court that he had sufficient evidence for a reasonable fact finder to conclude with "reasonable probability" that he would have accepted the plea offer) (citation and internal quotations omitted).

1  has no constitutional obligation to raise all non-frivolous issues on
2  appeal.  Pollard v. White, 119 F.3d 1430, 1435 (9th Cir. 1997).  "A
3  hallmark of effective appellate counsel is the ability to weed out
4  claims that have no likelihood of success, instead of throwing in a
5  kitchen sink full of arguments with the hope that some argument will
6  persuade the court."  Id.

7

8       To the extent Petitioner faults his appellate attorneys for
9  failing to raise on appeal Petitioner's claim that his trial counsel
10 allegedly provided ineffective assistance in failing to advise
11 Petitioner of the purported six-year plea offer, Petitioner has not
12 shown any entitlement to habeas relief.  As previously discussed, in
13 2003 the Superior Court ordered Petitioner's delayed appeal to be
14 processed, but denied Petitioner's habeas petition alleging
15 ineffective assistance of trial counsel on the ground that this claim
16 supposedly should be raised first on appeal (see FAP, Exs 1, 2;
17 Respondent's Lodgment 10).  Because Petitioner's ineffective
18 assistance claim concerned matters outside the appellate record, the
19 Superior Court's denial of Petitioner's 2003 petition on the ground
20 that his claim of ineffective assistance should be raised on appeal
21 likely was erroneous under California law.  See People v. Mendoza
22 Tello, 15 Cal. 4th 264, 267-68, 62 Cal. Rptr. 2d 437, 933 P.2d 1134
23 (1997) (where analysis of a claim of ineffective assistance of trial
24 counsel would require recourse to matters outside the appellate
25 record, claim must be asserted in a petition for writ of habeas
26 corpus, not on direct appeal); People v. Pope, 23 Cal. 3d 412, 426-28,
27 152 Cal. Rptr. 732, 590 P.2d 859 (1979).  Here, Petitioner's claim of
28 ineffective assistance of trial counsel concerned matters outside the

appellate record, *i.e.*, alleged extra-record communications concerning a purported six-year plea offer. Had Petitioner's appellate counsel included his claim of ineffective assistance of trial counsel in the direct appeal, the Court of Appeal likely would have applied California law correctly and rejected the claim as inappropriate on direct review. Therefore, Petitioner has not shown a reasonable probability of a different outcome had appellate counsel raised Petitioner's claim of ineffective assistance of trial counsel on appeal. See Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001) (appellate counsel's failure to raise an issue on direct appeal cannot constitute ineffective assistance when "the appeal would not have provided grounds for reversal") (citation omitted).

To the extent Petitioner contends Mr. Faal caused the direct appeal to be dismissed by ineffectively failing to file an appellate brief, Petitioner's claim lacks merit for want of any prejudice. Less than a month after the dismissal, the Court of Appeal reinstated the appeal and appointed new counsel for Petitioner (see FAP, Ex. 3).

To the extent Petitioner contends his appellate attorneys failed to raise or perfect Petitioner's claims in state court habeas proceedings, Petitioner is not entitled to federal habeas relief. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Moreover, Petitioner enjoyed no constitutional right to counsel in state post-conviction proceedings. See Murray v. Giarratano, 492 U.S. 1, 7-10 (1989); Pennsylvania v. Finley, 481 U.S.

551, 556 (1987); Wainwright v. Torna, 455 U.S. 586, 587-88 (1982);
Cook v. Schriro, 538 F.3d 1000, 1027 (9th Cir. 2008), cert. denied,
129 S. Ct. 1033 (2009).


   For the foregoing reasons, under the standard set forth in 28
U.S.C. section 2254(d)(1), the state courts did not act unreasonably
in rejecting Petitioner's claim of ineffective assistance of appellate
counsel.  Petitioner is not entitled to habeas relief on Ground Three
of the Petition.


**RECOMMENDATION**


   For the foregoing reasons, IT IS RECOMMENDED that the Court issue
an Order: (1) approving and adopting this Report and Recommendation;
(2) denying Respondent's Motion for Reconsideration as moot; and
(3) denying and dismissing the First Amended Petition with prejudice.


        DATED:   July 13, 2011.


                     _____/S/_____
                          CHARLES F. EICK
                     UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

If the District Judge enters judgment adverse to Petitioner, the District Judge will, at the same time, issue or deny a certificate of appealability. Within twenty (20) days of the filing of this Report and Recommendation, the parties may file written arguments regarding whether a certificate of appealability should issue.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SCHACOBIE H. MANNING,       )     NO. CV 07-4389-MMM(E)
                            )
              Petitioner,   )
                            )
     v.                     )     ORDER ADOPTING FINDINGS,
                            )
M.C. KRAMER, Warden,        )     CONCLUSIONS AND RECOMMENDATIONS OF
                            )
              Respondent.   )     UNITED STATES MAGISTRATE JUDGE
                            )
_____)

     Pursuant to 28 U.S.C. section 636, the Court has reviewed the
Petition, all of the records herein and the attached Report and
Recommendation of United States Magistrate Judge.  The Court approves
and adopts the Magistrate Judge's Report and Recommendation.

     IT IS ORDERED that Judgment be entered: (1) denying Respondent's
Motion for Reconsideration as moot; (2) denying and dismissing the
First Amended Petition with prejudice.

///

///

///

1          IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2     the Magistrate Judge's Report and Recommendation and the Judgment

3     herein on Petitioner, Petitioner's counsel, and counsel for

4     Respondent.

5

6          LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8          DATED:  _____, 2011.

9

10

11              _____
                     MARGARET M. MORROW
12              UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SHACOBIE H. MANNING,      )    NO. CV 07-4389-MMM(E)
                         )
          Petitioner,   )
                         )
    v.                )         JUDGMENT
                         )
M.C. KRAMER, Warden,    )
                         )
          Respondent.   )
                         )
_____)

    Pursuant to the Order Adopting Findings, Conclusions and Recommendations of United States Magistrate Judge,

    IT IS ADJUDGED that the Petition is denied and dismissed with prejudice.

        DATED: _____, 2011.


                        _____
                           MARGARET M. MORROW
                     UNITED STATES DISTRICT JUDGE